## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CARRIE R.W.,**

**Plaintiff,**

**v.**                                                  **Civil Action 2:25-cv-159**
                                                        **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**


## OPINION AND ORDER

Plaintiff, Carrie R.W., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 9). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

### I.       BACKGROUND

Plaintiff protectively filed her application in January 2022, alleging that she became disabled beginning January 1, 2019. After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on October 19, 2023, at which Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On January 23, 2024, the ALJ issued an unfavorable

determination, which became final on December 19, 2024, when the Appeals Council declined review. (R. at 17–25, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ erred when determining that none of her medically determinable impairments ("MDIs") were severe. (Pl.'s Statement of Errors 9–12, 16–18, ECF No. 10.) She also relatedly contends that the ALJ erred when evaluating medical opinions and prior administrative findings. (*Id*. at 9, 12–16, 19.)[1] Defendant contends that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n 3–9, ECF No. 16.)

---

[1] Plaintiff also states that the ALJ erred when performing a subjective symptom assessment (*f.k.a*., a "credibility determination"). (Pl.'s Statement of Errors 9, ECF No. 10.) But she fails to develop this argument and has thus forfeited it. *See McPherson v. Kelsey*, 125 F.3d 989, 996–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted) ); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006) ("This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").

## II.     THE ALJ's DECISION

The ALJ issued the unfavorable determination on January 23, 2024. (R. at 17–25.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her January 25, 2022 application date. (*Id.* at 19.) At step two, the ALJ found that Plaintiff had the following MDIs: borderline obesity; urinary tract infection; viral syndrome; sinusitis; covid; constipation; two small lesions on arm; sunburns; hemorrhoids; ear infection; vision impairment; gastroesophageal reflux disease ("GERD"); hyperlipidemia; diverticulitis; thyroid nodule; bruxism; heel spur; osteoarthritis, right knee; anxiety; and depression. (*Id.*) The ALJ also found that none of these MDIs were severe, either on their own or combined. (*Id.* at 20.) Finally, the ALJ determined that Plaintiff's irritable bowel syndrome and constipation, asthma, and disorders of the spine were not MDIs. (*Id.* at 21–22.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Because the ALJ found that Plaintiff had no severe MDIs, she determined that Plaintiff was not disabled during the relevant time frame without proceeding to consider the remaining steps in the sequential evaluation process. (*Id*. at 25.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a

4

substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that the ALJ erred by finding that none of her

MDIs were severe and by improperly evaluating medical opinions and prior administrative

findings. The Court addresses each contention in turn and concludes that neither has merit.

### A.    The ALJ's Step-Two Determinations

As a preliminary matter, Plaintiff appears at times to conflate impairments the ALJ

determined were not MDIs with impairments the ALJ found were MDIs but not severe. The

Court therefore addresses both the ALJ's step-two MDI findings and her step-two severity

determinations.

#### 1.    Step-Two Standards

At step two, an ALJ must determine if a claimant has an impairment that is medically

determinable—*i.e.*, one resulting from anatomical, physiological or psychological abnormalities

that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20

C.F.R. §§ 416.920; 416.921. Such "impairment[s] must be established by objective medical

evidence from an acceptable medical source." 20 C.F.R. § 416.921. They must also meet the

durational requirement in 20 C.F.R. § 416.909, which provides that "[u]nless your impairment is

expected to result in death, it must have lasted or be expected to last for a continuous period of at

least 12 months." A plaintiff bears the burden of establishing that an impairment meets the

duration requirement at step two. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir.

2012).

If an impairment is medically determinable, an ALJ must then determine whether it is

severe. 20 C.F.R. § 416.920(a)(4)(ii). A "severe impairment" is defined as "any impairment or

combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If a claimant has at least one severe MDI, an ALJ must consider the limiting effects of all a claimant's MDIs, severe and not, when formulating a claimant's RFC. 20 C.F.R. § 416.923.

Although a claimant bears the burden of proving that an impairment is medically determinable at step two, the United States Court of Appeals for the Sixth Circuit has explained that the step two inquiry is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). Accordingly, a claimant's burden at step two is "a *de minimis* hurdle in the disability determination process" requiring a claimant to show only that an impairment has more than a minimal impact on his ability to perform work-related functions. *Id*. at 862. Still, an impairment must be medically determinable, severe, and of sufficient duration or there will be a finding of non-disability. 20 C.F.R. § 416.920(a)(4)(ii).

### 2. The ALJ's MDI Determinations

#### a. IBS with Chronic Constipation

Plaintiff challenges the ALJ's determination that her IBS with chronic constipation was not an MDI. (Pl.'s Statement of Errors 17–18, ECF No. 10.) She specifically contends that the ALJ improperly concluded that her condition failed to satisfy the 12–month durational requirement. (*Id*.) That contention mischaracterizes the ALJ's reasoning.

The ALJ discussed Plaintiff's IBS with chronic constipation as follows:

The record also shows non-medically determinable impairments. The claimant reported having irritable bowel syndrome (IBS) (Ex. 3F-2), but she was not diagnosed with this condition based on objective signs and findings. This was noted as a diagnosis at Exhibit 12F-7 but there are no objective signs or findings (e.g. CT

> or x-ray of her abdomen). She was seen for constipation and noncompliant with prescribed regimen of laxatives. (Ex. 16F-4, 64). Regardless, even if her complaints of constipation amount to IBS, the record does not support any functional limitations from her constipation. Physical exams are also within normal limits, as she was in no distress with normal bowel sounds and no guarding. She also had a diagnosis from a chiropractor who is not an acceptable medical source. (Exs. 4F, 13F).

As this discussion demonstrates, the ALJ did not determine that Plaintiff's IBS with chronic constipation did not constitute a MDI because it failed to meet the 12–month duration requirement. Rather, the ALJ determined it was not an MDI because it was not diagnosed by an acceptable medical source who used objective signs and findings.

Substantial evidence supports that determination. The record reflects that Plaintiff regularly told providers that she had IBS or that her IBS was included in descriptions of her past medical history. (*See e.g.*, R. at 374, 549.) But Plaintiff does not point to any medical record demonstrating that an acceptable medical source diagnosed her with IBS based on objective evidence. As the ALJ noted, the record contains one treatment note in which Plaintiff was assessed by a doctor as having IBS, but that assessment was not based on any objective signs or findings such as a CT scan or an X-Ray. (*Id*. at 485–86.) Indeed, that note does not indicate that Plaintiff's abdomen was physically examined that day.

More importantly, the ALJ further determined that even if Plaintiff's chronic constipation constituted IBS, the record did not demonstrate any resulting functional limits (*i.e.*, the record did not demonstrate that her IBS was severe). Substantial evidence supports that determination as well. In March 2021, Plaintiff denied abdominal pain or a change in her bowel habits; an examination that day found that her abdomen was normal, soft, nontender, and nondistended and that she had no guarding or rigidity, palpable masses, or rebound tenderness. (*Id*. at 314, 316.) Later that month, Plaintiff's abdomen was soft, nontender, nondistended, and had no palpable

masses. (*Id*. at 627.) In February 2022, Plaintiff's abdominal examination was benign. (*Id*. at 374.) In April 2022, Plaintiff's abdomen was soft, nontender, nondistended, with no masses palpable, her bowel sounds were normal, and she had no guarding or rigidity. (*Id*. at 454.) In May 2022, Plaintiff reported that "her bowel movement sometimes occasionally good and other times [. . . ] constipated." (*Id*. at 444.) Plaintiff had surgery in July 2022 to remove hemorrhoids, but abdominal examinations during that time were also routinely normal. (*Id*. at 695, 715, 732, 680, 738.) In August 2022, Plaintiff reported constipation but that she did well on MiraLAX. (*Id*. at 486.) In October 2022, Plaintiff denied abdominal pain and a change in bowel habits, and an examination again found that her abdomen was normal, soft, nontender, and nondistended with no guarding or rigidity, palpable masses, or rebound tenderness. (*Id*. at 549, 551.) In November 2022, a gastroenterologist wrote: "There are no alarm findings at this time." (*Id*. at 572–73.) At a follow up visit in February 2023, the same gastroenterologist found that Plaintiff's abdomen was nondistended and that she had normal bowel sounds. (*Id*. at 849.)

Moreover, the ALJ reasonably relied on evidence that Plaintiff was non-compliant with prescribed treatment for her constipation. In May 2022, Plaintiff complained of slow transit constipation but admitted that she had not followed a prescribed regimen. (*Id*. at 444 (noting that Plaintiff "failed use of order regimen").) In November 2022, Plaintiff's gastroenterologist wrote that Plaintiff symptoms reportedly improved when she took MiraLAX and Metamucil as directed, but that she had been "slacking off of the meds" more recently. (*Id*. at 570) Although she was instructed to increase her MiraLAX dosage at that time, she later reported taking less than directed. (*Id*. at 573, 847–48.) Even so, she reported improvements in bowel function. (*Id*. at 848.)

Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's IBS with chronic constipation was not an MDI and, even if it was, it was not severe. Plaintiff's contention of error lacks merit.

### b. "Disorders of the Spine"

Plaintiff also contends that the ALJ erred when finding that her alleged spinal disorder was not an MDI at step two. (Pl.'s Statement of Errors 18–19, ECF No. 10.) Plaintiff specifically contends that the ALJ erred because she rejected this condition as a MDI because the record did not contain an X-Ray. (*Id*. at 18.) This contention also mischaracterizes the ALJ's reasoning.

The ALJ discussed Plaintiff's spinal issues as follows:

> The state agency Disability Determination Services ("DDS") consultants found a severe impairment of "disorders of the spine," but, as noted by the representative brief, which cites to all of the medical evidence in the file, she has no diagnosis of any spine related condition in this record from an acceptable medical source. She sees a chiropractor, but they cannot diagnose for purposes of our program. The consultative examiner likewise does not diagnose any condition, and simply notes back and neck pain as part of the history. I note that at Exhibit 2A, they reference x-rays from a consultative examiner from a 2020 prior claim. However, even assuming that these x-rays showed a condition to support a medically determinable impairment, it would nevertheless be non-severe considering the lack of any treatment other than chiropractic care, as well as her overwhelmingly normal physical exam findings throughout this record.

(R. at 21–22.) As this discussion demonstrates, the ALJ did not determine that Plaintiff's spinal complaints were not an MDI because the record lacked an X-Ray. Rather, the ALJ determined that Plaintiff's spinal disorder was not an MDI because she was not diagnosed with any spinal condition by an acceptable medical source.

Substantial evidence supports that determination. Plaintiff does not point to evidence that an acceptable medical source diagnosed her with a spinal condition based on objective evidence. As the ALJ noted, the record contains notes from Plaintiff's chiropractor, but a chiropractor is not an acceptable medical source. *See* 20 C.F.R. § 416.902(a) (excluding chiropractors from the

list of acceptable medical sources). And a claimant must point to "objective medical evidence from an acceptable medical source to establish the existence of a [MDI] that could reasonably be expected to produce [her] alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3.

The ALJ also correctly noted that the consultative examiner did not diagnose Plaintiff with any spinal issue. (R. at 466–78.) Moreover, the ALJ explained that the state agency reviewers referenced an X-Ray from a prior claim. (*Id*. at 21–22.) But even if that X-Ray could have supported a MDI finding during the relevant period, the ALJ determined that Plaintiff's MDI would not have been severe given that Plaintiff only sought chiropractic treatment. (*Id*.) Substantial evidence also supports this explanation. Plaintiff does not point to any evidence that she sought treatment for her spine from any healthcare professional other than her chiropractor.

The ALJ also based her severity determination on Plaintiff's routinely normal examination findings. Substantial evidence supports this explanation too because Plaintiff's musculoskeletal examinations were often benign. For instance, at an exam in March 2021, Plaintiff denied muscle weakness. (*Id*. at 315.) In July 2022, Plaintiff's back examination was normal, and she had no tenderness. (*Id*. at 696.) At that time, she also denied an abnormal gait, back pain, joint swelling, limited range of motion, or muscle weakness. (*Id*. at 713.) At her consultative examination in August 2022, Plaintiff had only mild lumbar spinal tenderness and no evidence of muscular asymmetry, atrophy, or acute joint findings. (*Id*. at 470.) She also had normal strength and range of motion bilaterally and was able to sit, stand, walk, and rise from an exam table multiple times without problems or assistance. (*Id*.) Plaintiff denied muscle weakness and gait abnormalities in October 2022, and her spine examination was normal with no costovertebral angle tenderness. (*Id*. at 549, 551.) In November 2022, and February 2023, she denied weakness or falls. (*Id*. at 572, 849.)

Plaintiff points to chiropractic findings of pain and restricted motion in her cervical, thoracic, and lumbar spine. (Pl.'s Statement of Errors 19, ECF No. 10.) But where substantial evidence supports an ALJ's determination it will be upheld, even if substantial evidence could support a different conclusion. *See Emard*, 953 F.3d at 849. In any event, those same chiropractic notes appear to show that Plaintiff's spine-related complaints did not meet the 12-consecutive month durational requirement. Plaintiff sought chiropractic treatment for back pain for ten months–from December 13, 2021, until October 11, 2022. (R. at 391, 389, 387, 385, 383, 514, 516, 518, 520, 522, 524, 526, 528, 530, 532, 534.) She did not return for treatment again until a year later, on October 13, 2022. (*Id*. at 536.) Plaintiff has not pointed to, and the Court has not found, evidence that Plaintiff complained about back pain to any healthcare professional outside of these two discrete periods, neither of which lasted for twelve consecutive months. Thus, she has failed to show that her condition met the durational requirement.

In short, substantial evidence supports the ALJ's determination that Plaintiff's spinal disorder was not an MDI and, even if it was, it was not severe. Plaintiff's contention to the contrary lacks merit.

### 3. The ALJ's Severity Determinations

#### a. Osteoarthritis in the Right Knee

Plaintiff further contends that the ALJ reversibly erred when assessing osteoarthritis in her right knee at step two. (Pl.'s Statement of Errors 16–17, ECF No. 10.) The Court agrees that the ALJ erred when discussing this impairment, but concludes that the error was harmless.

The ALJ initially determined that Plaintiff's osteoarthritis in her right knee was a MDI. (R. at 19.) But the ALJ further determined that it was not severe because it was one of several "chronic conditions that [did] not limit [Plaintiff's] functioning." (*Id*. at 21.) The ALJ explained

11

that it, and the several other chronic conditions, caused only transient and mild symptoms, were well controlled with treatment, did not met the 12-month durational requirement, or were otherwise not adequately supported by the medical evidence of record. (*Id*.) As part of this discussion, the ALJ expressly noted that Plaintiff had "osteoarthritis in the right knee . . . , which was seen for treatment only after she bruised it." (*Id*.)

Plaintiff correctly contends that the ALJ erred, at least in part, on this point. Imaging in April 2022 revealed that Plaintiff had mild osteoarthritis in her right knee. (*Id*. at 415.) Plaintiff also reported right knee pain during her August 2022 consultative examination. (*Id*. at 466.) But, contrary to what the ALJ wrote, Plaintiff did not seek treatment for her right knee after injuring it.[3] Indeed, it appears that Plaintiff never sought treatment for her right knee. Accordingly, the ALJ's error was harmless.

Moreover, the ALJ's determination that this condition was not severe was supported by substantial evidence. As the ALJ explained, the record showed that it caused only transient symptoms and was not otherwise adequately supported by the record. For example, during her August 2022 consultative examination, Plaintiff's strength and ranges of motion were normal in both of her knees. (*Id*. at 470, 472, 475.) Likewise, an examination in March 2023 found that had normal range of motion in her right knee and normal strength bilaterally. (*Id*. at 801.)

Medical records also noted that Plaintiff had no problems walking. On several occasions, Plaintiff reported that she was ambulatory without assistance and that she had "[n]ormal walking/striding without hesitation." (*Id*. at 346, 456, 583.) In July 2022, she had no abnormal gait. (*Id*. at 713.) Plaintiff also had a normal, reciprocal gait pattern without an assistive device

---

[3] Plaintiff sought treatment for her left knee after she injured it. The records indicate that she may sustained that injury while cleaning out a burn barrel or throwing a tool into her shed. (R. at 800, 875.)

during her August 2022 consultative examination. (*Id*. at 469.) And even though Plaintiff had an abnormal gait in February 2023, it was attributed to her left leg, which she had recently bruised, and not her right knee. (*Id*. at 875, 800.)

For these reasons, the Court concludes that the ALJ did not reversibly err when determining that Plaintiff's osteoarthritis in her right knee was not severe. Plaintiff's contention of error, therefore, lacks merit.

### b. Anxiety and Depression

Finally, Plaintiff contends that the ALJ erred when determining that her anxiety and depression were not severe. (Pl.'s Statement of Errors 11–16, ECF No. 10.) This contention of error also lacks merit.

The ALJ discussed Plaintiff's depression and anxiety as follows:

> Concerning the claimant's mental health, DDS found "severe" impairments, but there is little to no evidence outside of the consultative exam at 7F. For example, before the protective filing date she reported some anxiety "due to stresses at home" but wanted to "hold off" on any treatment (Ex. 2F-1-2). Her objective examination at this time was normal as she was in no apparent distress, "sound][ed] well" and was alert and oriented with normal speech (id). She sought no mental health treatment on/after the protective filing date. When seen for her physical complaints her mental status was consistently normal (Exs. 8F-1, 5; 10F-5, 9, 14, 17; 12F-5, 8; 15F-6-8, 16-27, 31, 84; 17F).

(R. at 22.)

As this discussion shows, the ALJ determined that Plaintiff's depression and anxiety were not severe for at least two reasons. First, the ALJ explained that although the state agency reviewers found that Plaintiff's mental health impairments were severe, they had little evidence to support that conclusion aside from the consultative examiner's report. Substantial evidence supports that explanation. As the ALJ noted, Plaintiff declined to pursue mental health treatment

before or after filing her applications. (*Id*.) Accordingly, the record lacks a longitudinal treatment history.

Second, the ALJ explained that Plaintiff's mental status was consistently normal during examinations for her physical health. (*Id*.) Substantial evidence supports that explanation. Examiners often found that Plaintiff had normal or appropriate mood and/or affect (*Id*. at 642, 621, 583, 696, 720, 687, 469, 840.) She was also found to have good eye contact, insight, and judgment. (*Id*. at 454, 552.) She was described as pleasant (*id*. at 316, 427, 590, 470) or cooperative (*id*. at 427, 597, 454, 590, 424, 469, 486, 552, 572, 849, 801). Her appearance was noted to be normal (*id*. at 316, 840, 823) or that she did not appear ill (*id*. at 823). Her speech was clear (*id*. at 454) or normal (*id*. at 469) or spontaneous with normal articulation or no appreciable deficits (*id*. at 348, 344, 336, 334, 328, 457, 441, 668, 657, 483). She was also routinely described as being in no acute or apparent distress. (*Id*. at 347, 641, 316, 344, 627, 427, 620, 336, 334, 328, 374, 457, 597, 454, 590, 449, 424, 445, 581, 441, 667, 486, 657, 483, 650, 572, 849, 792.)

Consequently, substantial evidence supports the ALJ's determination that Plaintiff's anxiety and depression were not severe. Thus, this contention of error also lacks merit.

## B.    The ALJ's Evaluation of Medical Opinions[4] and Prior Administrative Findings

Plaintiff relatedly challenges the ALJ's evaluation of opinion evidence and prior administrative findings. (Pl.'s Statement of Errors 9, 12–15, 19, ECF No. 10.) She contends that

---

[4] Plaintiff does not challenge the ALJ's evaluation of medical opinions from consultative physical examiner Dr. Kahn but instead cites Dr. Kahn's report in support of other contentions of error. (Pl.'s Statement of Errors 17, 19, ECF No. 10.) To the extent she intended to challenge the ALJ's assessment of Dr. Kahn's opinion, her arguments are forfeited because they were not sufficiently developed. *See McPherson,* 125 F.3d at 996–96; *Hollon,* 447 F.3d at 490–91.

14

the ALJ improperly discounted opinions and findings that showed that her MDIs were severe. This contention of error lacks merit.

### 1. The Evaluation of Medical Opinions and Prior Administrative Findings

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And even though an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*.

### 2. State Agency Physical Reviewers—Drs. McKee and Siddiqui

---

[5] Because Plaintiff's application was filed in 2022, it is subject to regulations governing applications filed after March 27, 2017.

Plaintiff challenges the ALJ's evaluation of prior administrative findings from Drs. McKee and Siddiqui, who reviewed Plaintiff's file at the initial and reconsideration stages respectively. (R. at 50–58, 60–68.) Both reviewers found that Plaintiff had severe physical impairments and that she was limited to a range of light work that included some postural limits. (*Id*. at 54–55, 64–65.)

> The ALJ discussed those prior administrative findings as follows:
>
> The DDS physical findings limiting the claimant to a range of light work are not persuasive. First, the only impairments they note are "disorders of the spine" (which, as noted, is not a medically determinable impairment in the current period, as we only have chiropractic records and nothing from an acceptable medical source, with no significant treatment or physical exam findings since the protective filing date), disorders of the urinary tract (here, as noted, she has had some urinary tract infections, but nothing chronic lasting 12 months or longer) and "other and unspecified arthropathies" (which typically means some form of degenerative joint disease, though the DDS fails to identify where). However, on this record, we see only mild/tiny abnormalities in the left knee and some limited range of motion without any related diagnosis in the shoulders at the consultative exam. Therefore, barring evidence of a severe and medically determinable impairment in these areas, it was inappropriate for the DDS to find limits, and these limits are not well supported. The DDS findings of fact and analysis of evidence does not support finding severe physical impairments (see Ex. 4A-3 all noted exams are normal). DDS also inappropriately relied on a consultative examination from 2020 (Ex. 2A-3), which included some x-rays. While those x-rays reportedly showed some abnormalities, finding these conditions to be severe on and after 1/25/22 is still inappropriate, as it is inconsistent with the collateral record showing no recent imaging and only minimal treatment in the form of chiropractic care, as well as no current diagnosis in the period under review. For these reasons, and the reasons explained as to why her impairments are non-severe, the DDS findings are unpersuasive, as they are not supported by the overall evidence of record.

(*Id*. at 24–25.) As this discussion demonstrates the ALJ considered the supportability and consistency factors and found them lacking.

When considering supportability, the ALJ determined that the reviewers' "findings of fact and analysis of evidence [did] not support finding severe physical impairments." (*Id*. at 24.) When making that determination, the ALJ cited Dr. Siddiqui's "Physical Summary," and

explained that "all noted exams are normal." (*Id.* (citing R. at 62).) Substantial evidence supports that explanation. That "Physical Summary" discussed information from eight medical records, including the results of three physical examinations. (*Id.* at 62.) The summary discussion indicated that Plaintiff's physical examinations were normal during her November 17, 2022 office visit with a gastroenterologist and at an October 26, 2022 treatment after her hemorrhoid surgery. (*Id.*) The summary discussions also indicated that a September 13, 2022 examination found that Plaintiff had "no appreciable motor deficits." (*Id.*) The ALJ reasoned that these normal examination results did not substantiate Dr. Siddiqui's finding of severe impairments, and thus, that severity finding lacked support.

Plaintiff nevertheless urges that the ALJ erred when she wrote that "all noted examinations are normal," presumably because other examinations in the record were not. (Pl.'s Reply 2, ECF No. 16.) But the ALJ wrote that "all *noted* exams are normal," and she cited Dr. Siddiqui's summaries. (R. at 24 (emphasis added).) She did not write "all exams are normal" and cite to the record. Notably, supportability refers to the degree to which a medical source presents relevant, objective medical evidence and supporting explanations to support his or her opinion. *See* 20 C.F.R. § 1520c(c)(1). Thus, when considering supportability, the ALJ did not err by observing that that the noted exams—the ones that were summarized in the "Physical Summary"—were normal.

When considering consistency, the ALJ also explained that Dr. McKee relied on a consultative examination from 2020 that included cervical and lumbar X-Rays that may have shown some abnormalities. (R. at 24–25 (citing *id.* at 52).) The ALJ determined that even if those images from a prior period showed some abnormalities, the reviewers' finding that they showed severe impairments in the relevant period was "inconsistent with the collateral record

showing no recent imaging and only minimal chiropractic care." (*Id*.) Substantial evidence

supports that consistency determination. The record does not contain any imaging of Plaintiff's

spine during the relevant period or any record of treatment for her back issues aside from

chiropractic care, which she pursued for ten months before taking a year-long break.

More globally, the ALJ determined that reviewers' finding were unpersuasive because

the only physical impairments that they identified were disorders of the spine, urinary tract

disorders, and other unspecified arthropathies that were apparently related to Plaintiff's

osteoarthritis in her right knee. (*Id*. at 24–25, 52, 63.) The ALJ explained that because none of

these impairments constituted severe MDIs, it was inappropriate for the reviewers to find that

they caused any functional limits. Substantial evidence supports that explanation. As discussed

above, the ALJ did not err by finding that Plaintiff's disorders of the spine did not constitute a

MDI and that her osteoarthritis in her right knee was not severe. And Plaintiff does not

challenge the ALJ's assessment of her urinary tract infections.

Because the ALJ's supportability and consistency determinations were supported by

substantial evidence, the ALJ did not err when evaluating prior administrative findings from

Drs. McKee and Siddiqui. Plaintiff's contention of error lacks merit.

### 3.    Consultative Psychological Examiner—Dr. Arnold

Plaintiff also challenges the ALJ's evaluation of medical opinions from Dr. Arnold, who

consultatively examined Plaintiff on April 18, 2022. (*Id*. at 417–22.) The ALJ summarized and

discussed Dr. Arnold's examination report as follows:

> At the consultative examination, she reported a variety of symptoms. Her mental
> status exam was normal, except that she reported that her mood was down, irritable
> and overwhelmed, and the consultative examiner found her affect was congruent.
> Her speech and orientation were normal. She recalled 2/3 words after a delay and
> performed better on digit span forward than backward. Her fund of knowledge was
> limited. She could not perform serial 7s but was not tested on serial 3s. She could

spell "world" forward and not backward but had no difficulty following the conversation. Her abstract thinking was intact, as were insight and judgment. The consultative examiner opined to no limits in understanding, remembering or applying information. I note that at this exam her delayed recall was 2/3 and her "digits backward" performance was only 2/6. however, the collateral record shows no deficits with memory. Therefore, while the consultative examiner noted no limits here, I find a mild limit based on the specific testing performed at the exam. The consultative examiner opined to no limits in concentration, persistence, or maintaining pace under "functional information" but, later, indicated that she was distractible and fatigued. On exam, the claimant could not perform serial 7's or spell "world" backward, which are measures of concentration. While there is no collateral evidence of any deficits in this domain in her treatment records, I considered her performance on mental testing on this one date to find a mild limit. The consultative examiner did not offer specific functional opinions related to the social domain but simply restated the claimant's subjective reports of spending time with family and people at church as well as caretaking other family members yet feeling lonely and isolating. She interacted appropriately with the examiner, though the examiner found her affect to be congruent with her depressed and irritable mood, she did not describe any objective signs to support this. I therefore find a mild limit here as well. Finally, the consultative examiner opined that the claimant has a "reduced ability" to do many activities and "reduced tolerance for things being unsanitary or unsafe for her son" and that she adapted to her limits on managing stressors by self-isolating. These are better characterized as restatements of the claimant's subjective reports than medical opinions, as they do not express opinions in functional terms based on any objective signs or findings in the exam. The claimant was able to complete the mental testing at the exam without any evidence of decompensation or being overwhelmed or unable to continue. The collateral record does not support the claimant's subjective assertions. She can take care of her family and herself, including seeking appropriate medical care when reason exists to do so. While the consultative examination findings were minimally supported in part by some findings on this one-time exam, they are generally not expressed in functional terms (e.g., the consultative examiner noted the claimant was able to sustain concentration and show persistence for simple tasks for a short period of time but did not actually opine that the claimant would be unable to understand, remember or apply instructions for detailed or complex tasks). Additionally, the consultative examiner's findings are not well supported due to the internal inconsistencies between the "functional information" and the "functional assessment". More importantly, the consultative examiner's opinions, to the extent they could be treated as such, are inconsistent with the collateral record, which does not reflect either the frequency or severity of symptoms or objective findings reported and/or found at this exam. For these reasons the consultative examiner's opinions are not persuasive to support even a moderate limit in any area.

(R. at 22–23.) As this discussion demonstrates, the ALJ considered the supportability and consistency factors and found them both to be lacking.

First, the ALJ determined that Dr. Arnold's opinion lacked support because of internal inconsistencies in her examination report. Substantial evidence supports that determination. The ALJ explained that Dr. Arnold noted no limits in Plaintiff's ability to understand, remember, and apply information. (*Id*. at 22, 421.) But, as the ALJ explained, Dr. Arnold also wrote that during testing, Plaintiff's delayed word recall was only 2/3 and her ability to recite digits backwards was only 2/6. (*Id*. at 22, 419.) Given Plaintiff's performance on these memory tests, the ALJ concluded that she had mild impairments instead of no impairments in this area and that she was more limited than Dr. Arnold seemingly opined. (*Id*. at 22.)

Similarly, the ALJ noted inconsistencies in Dr. Arnold's opinions about Plaintiff's concentration, persistence, and pace. As the ALJ explained, Dr. Arnold opined no limits in this area in the "functional information" section of her report. (*Id*. at 22.) In that section, Dr. Arnold wrote that Plaintiff was "able to sustain concentration and show persistence for up to an hour or more while taking care of and being with her son, daughter and mother. [She] is able to do these activities in a timely manner and at a reasonable pace." (*Id*. at 420.) But elsewhere Dr. Arnold also wrote that Plaintiff was distractable and fatigued. (*Id*. at 421.) The ALJ also noted that during concentration testing, Plaintiff was unable to perform serial 7s or spell "world" backwards. (*Id*. at 22.) Accordingly, the ALJ determined that Plaintiff had a mild limit, rather than no limit, as seemingly opined in at least one part of the examination report.

With regard to Plaintiff's social interaction abilities, the ALJ correctly explained that Dr. Arnold did not opine specific functional limits in this area. (*Id*. at 22.) But the ALJ also correctly noted that although Dr. Arnold determined that Plaintiff's affect was congruent with her depressed and irritable mood, Dr. Arnold did not describe any objective signs to support that finding. (*Id*. at 22, 419.) Accordingly, the ALJ determined that Dr. Arnold's opinions were,

20

overall, only "minimally supported in part by some findings on this one-time exam . . . " (*Id*. at 22.)

When considering the consistency factor, the ALJ determined that Dr. Arnold's opinion was inconsistent with the collateral record, which did not "reflect the frequency or severity of symptoms or objective findings reported and/or found" during Dr. Arnold's examination. (*Id*. at 23.) Substantial evidence supports that explanation. The ALJ explained elsewhere in her determination that Plaintiff's mental status was consistently noted to be normal. (*Id*. at 22.) And the record shows that examiners often found that Plaintiff had normal or appropriate mood and/or affect (*id*. at 642, 621, 583, 696, 720, 687, 469, 840).

Plaintiff nonetheless contends that the ALJ erred when assessing Dr. Arnold's opinion because she found that Dr. Arnold limits were restatements of Plaintiff's subjective reports. (Pl.'s Statement of Errors 15–16, ECF No. 10.) But this mischaracterizes the ALJ's evaluation of Dr. Arnold's opinion, which was that some of the limits Dr. Arnold opined "were better characterized as restatements of Plaintiff's subjective reports rather than medical opinions, as they do not express opinions in functional terms based on objective signs or findings in the exam." (R. at 22.) Thus, the ALJ did not discount Dr. Arnold's opined limits simply because they were based on Plaintiff's subjective reports. Instead, the ALJ explained that some of Dr. Arnold's "limits" did not truly constitute opinions because they were not stated in concrete functional terms.

The cases cited by Plaintiff on this point are unavailing because they discuss that clinical observations can be used to support a medical opinion about the limits caused by a plaintiff's mental health impairments. (Pl.'s Statement of Errors 9–12, 15–16, ECF No. 10.) And to be sure, when mental illness is the basis of a disability claim, clinical and laboratory data may consist of

diagnoses and observations from trained professionals rather than more objective clinical manifestations. But even where an opinion is based on professional observations rather than something more tangible, like an X-Ray, an opined limit must still be stated in concrete functional terms.

Here, some of Dr. Arnold's limits lacked that requisite functionality. For instance, and as the ALJ explained, Dr. Arnold opined that Plaintiff had a "reduced ability to do many physical activities and mental tasks." (R. at 420, 22.) But Dr. Arnold failed to describe or quantify that reduced ability. What mental tasks were impacted? Understanding? Memory? Concentration? And to what extent were they reduced—to six hours in an eight-hour workday? Four hours?

In short, the ALJ's supportability and consistency determinations were supported by substantial evidence and the ALJ did not err by noting that some of Dr. Arnold's opinions were not stated as functional limits. Plaintiff's contention of error lacks merit.

### 4.    State Agency Psychological Reviewers—Drs. Swain and Fernandez

Plaintiff's file was reviewed initially and on reconsideration by Drs. Swain and Fernandez respectively. (*Id*. at 50–58, 60–68.) Both reviewers found that Plaintiff's mental impairments were severe and that she had moderate social interaction and adaptation limits. (*Id*. at 52, 56, 64, 66.)

The ALJ discussed those prior administrative findings as follows.

The DDS, which interpreted the consultative examiner's opinions to support moderate limits in the social and adapt/manage domains, is unpersuasive for the same reasons. The DDS findings were supported by reference to the consultative exam, which in itself was neither well supported nor consistent and, therefore, the same conclusion applies to the DDS findings.

(*Id*. at 23.) As this discussion demonstrates, the ALJ explained that the reviewers' findings were largely based on Dr. Arnold's consultative examination. (*Id*.) The ALJ further explained that

because Dr. Arnold's opinions were unsupported and inconsistent with the rest of the record, the reviewers' findings also lacked support and consistency.

Substantial evidence supports the ALJ's determination. As the ALJ accurately wrote elsewhere, the reviewers found that Plaintiff had severe impairments, but there was "little to no evidence" for them to make that finding aside from Dr. Arnold's consultative examination. (*Id*. at 22.) As the ALJ also correctly noted elsewhere, this was because Plaintiff did not pursue mental health treatment during the relevant period and thus the record lacked treatment records. (*Id*.) Moreover, and as the ALJ also wrote elsewhere, Plaintiff's mental status was consistently normal during examinations for her physical health—examiners often found that she had normal or appropriate mood and/or affect (*Id*. at 642, 621, 583, 696, 720, 687, 469, 840.)

Accordingly, the Court does not find that the ALJ reversibly erred when evaluating the reviewers' prior administrative findings. Plaintiff's contention lacks merit.

## V.    CONCLUSION

For all the foregoing reasons, the Court finds that the ALJ did not reversibly err at step two when determining that Plaintiff did not have any severe MDIs or when evaluating medical opinions and prior administrative findings. The Commissioner's non-disability determination is, therefore, **AFFIRMED** and Plaintiff's Statement of Errors is **OVERRULED**.


**IT IS SO ORDERED.**


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE